IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII MANAGEMENT ALLIANCE ASSOCIATION, <br><br> Plaintiff, <br><br> vs. <br><br> J.P. SCHMIDT, in the capacity as the Insurance Commissioner of the State of Hawai'i <br><br> Defendant. | CIVIL NO. 07-00593 ACK-KSC |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**FACTUAL BACKGROUND**

Defendant, J.P. Schmidt, is the Commissioner of the Insurance Division ("Insurance Division") for the State of Hawaii ("Commissioner"). Plaintiff, Hawaii Management Alliance Association ("HMAA"), is a mutual benefit society.

On December 8, 2004, the Commissioner issued Memorandum 2004-13H, which states that "[a] 'discretionary clause' granting to a plan administrator discretionary authority so as to deprive the insured of a *de novo* appeal is an unfair or deceptive act or practice in the business of insurance and may not be used in health insurance contracts or plans in Hawaii." See Memorandum 2004-13H at 3.

Three of HMAA's service agreements – Option Plus One, Option Plus Two, and Option Plus Three – contain the following discretionary clause:

> <u>Interpretation of Plan Benefits and Eligibility</u>. HMAA will interpret the provisions of the Agreement and will determine all questions that arise under it. HMAA reserves the administrative discretion to determine all eligibility and Covered Benefit issues, and to interpret the provisions of this Agreement as is necessary to determine all issues including determinations of medical necessity and the amount and type of benefits payable to or for Eligible Participants and Eligible Dependents under the terms of this Agreement.
>
> HMAA's interpretations are final, binding, and conclusive to the extent permitted by law. If Members disagree with HMAA's interpretation and determinations . . . HMAA may, at its sole discretion, pay benefits for care or services, pending a determination of whether or not such care or services are Covered Benefits, without affecting a waiver of any exclusions or limitations in the Plan.

One of HMAA's service agreements - EPO Two - contains the following language regarding the plan administrator's discretion:

> <u>Interpretation of Plan Benefits and Eligibility</u>. HMAA shall have the sole discretion to determine all questions of eligibility for Small Business Plan Participant and Dependents, to determine the amount and type of benefits payable to any Member in accordance with the terms of the Plan, and to interpret the provisions of this Agreement as is necessary to implement the Agreement and Plan.

In January 2005, identical legislative bills to outlaw discretionary clauses were introduced in the Hawaii State House of Representatives and Senate. See H.B. No. 1063, 23rd Cong. §§ 1-5 (2005); S.B. No. 140, 23rd Cong. §§ 1-5 (2005). However, neither bill became law.

On November 20, 2007, the Insurance Division informed HMAA that the Commissioner considered HMAA's use of discretionary clauses an "an unfair or deceptive practice in the business of insurance." The Insurance Division quoted the discretionary clause contained in the EPO Two service agreement that it considered improper. The letter explained that if HMAA did not remove the discretionary clauses from HMAA's service agreements by November 30, 2007, the Insurance Division would take "formal action."

On November 21, 2007, HMAA sent a written request for a two-week extension of the Insurance Division's November 30, 2007 deadline. That same day, the Insurance Division denied HMAA's request and reiterated that the Insurance Division would take "formal action" if HMAA did not remove the discretionary clauses from HMAA's service agreements.

On November 28, 2007, HMAA sent a letter to the Insurance Division, explaining that the Option Plus One, Option Plus Two and Option Plus Three service agreements did not use the EPO Two language that the Insurance Division quoted as unfair.

3

HMAA proposed to change the discretionary clause in EPO Two to mirror the language used in the other three service agreements.

On November 29, 2007, the Insurance Division sent a letter denying HMAA's proposal. The Insurance Division cited acceptable contract language from Memorandum 2004-13H.[1/] The letter explained that the alternative language proposed by HMAA (and contained in the Option Plus One, Option Plus Two and Option Plus Three service agreements) used phrases that were "unfair or deceptive" because it gave HMAA sole discretion to determine plan eligibility. The Insurance Division informed HMAA that HMAA must abide by the Commissioner's instruction by December 14, 2007 or the Insurance Division would take "formal action" to prohibit HMAA's use of discretionary clauses.

## PROCEDURAL BACKGROUND

On December 6, 2007, HMAA filed a complaint against the

---

[1/] The following boilerplate language was approved by the Commissioner in Memorandum 2004-13H:

> The Group hereby designates [INSURER] to be a fiduciary under the Plan solely for the purposes of (a) determining all questions of eligibility of Plan members; (b) determining the amount and type of benefits payable to any Plan members in accord with the Plan; and © interpreting the Plan provisions including those necessary to determine benefits. [INSURER'S] determinations and interpretations, and its decisions on these matters are subject to *de novo* review by an impartial reviewer as provided in the Plan or as allowed by law.

Commissioner alleging that by issuing Memorandum 2004-13H, the Commissioner improperly prohibited the use of discretionary clauses.  HMAA requests that the Court declare that Memorandum 2004-13H invalid, and seeks an order enjoining the Commissioner from enforcing Memorandum 2004-13H against HMAA.

On May 14, 2008, the Commissioner filed a Motion for Judgment on the Pleadings alleging that no justiciable case or controversy exists because HMAA lacks standing to sue and the case is not ripe for adjudication.

On May 30, 2008, HMAA filed a Motion for Summary Judgment.  HMAA contends that Memorandum 2004-13H is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").  In addition, HMAA claims that the Commissioner promulgated Memorandum 2004-13H as a rule in violation of the Hawaii Administrative Procedure Act ("HAPA").  Finally, HMAA argues that the Commissioner's issuance of Memorandum 2004-13H is barred by the filed rate doctrine and the doctrine of equitable estoppel.

Each motion has been fully briefed and the Court heard oral arguments on August 21, 2008.

**STANDARD**

**I.   Judgment on the Pleadings Standard**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") states, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."

5

If procedural defects are asserted in a Rule 12(c) motion, the district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), 12(b)(6), 12(b)(7), or 12(f).  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004).  Thus, "if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)."  Id.; see also Collins v. Bolton, 287 F. Supp. 393, 396 (N.D. Ill. 1968) ("Since defendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion [for judgment on the pleadings] as one to dismiss for lack of subject matter jurisdiction."); Engleson v. Burlington Northern Railroad Co., 1988 WL 332944 *2 n.1 (D. Mont. 1988) ("Because the motion [for judgment on the pleadings] raises only subject matter jurisdictional issues, the court treats the motion as one requesting dismissal for lack of subject matter jurisdiction").

**II. Summary Judgment Standard**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).[2/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323; see also Miller v. Glenn Miller Productions, 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court--that there is an absence of

---

[2/] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[3/]

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[4/]  The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.

---

[3/] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  See Miller, 454 F.3d at 987 (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  Id.

[4/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[5/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).

## DISCUSSION

The threshold issue in this case is whether the Court has jurisdiction over the claims raised by HMAA. "Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional case or controversy, that the issues presented are definite and concrete, not hypothetical or abstract." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), cert. denied, 531 U.S. 1143 (2001) (internal quotation marks omitted). To show that a constitutional case or controversy exists, a party invoking federal jurisdiction must satisfy "the irreducible constitutional minimum of standing" as governed by Article III of the Constitution. See Lujan v. Defenders of Wildlife, 504 U.S. 555,

---

[5/] At the summary judgment stage, a court may not make credibility assessments or weigh conflicting evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Bator v. State of Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

560 (1992). A party may invoke federal jurisdiction by establishing standing based on the threat of prosecution. See Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006). Standing based on the threat of prosecution is "informed by the same considerations" as the doctrine of ripeness. See Sacks, 466 F.3d at 773; see also Thomas, 220 F.3d at 1139 (ruling that ripeness and standing doctrines are nearly identical).

Ripeness prevents judicial interference in administrative decisions and allows courts to avoid prematurely adjudicating administrative policies that have not been finalized. See Abbot Labs. v. Gardner, 387 U.S. 136, 148-49 (1967) abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). To establish ripeness, a plaintiff must show that: (1) the issues are fit for judicial decision; and (2) the parties will suffer hardship if the court withholds jurisdiction. Abbot Labs., 387 U.S. at 149; see also Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 780 (9th Cir. 2000).

**A.   Fitness for Judicial Review**

"Agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action." See Anchorage v. United States, 980 F.2d 1320, 1323 (9th Cir. 1992). All parties agree that the issues presented in this case are purely legal. However, the parties

10

dispute whether the Insurance Division's actions were final.

To determine if an agency action is final, the Court must consider: (1) whether the administrative action is a definitive statement of an agency's position; (2) whether the action has the status of law; (3) whether the action has a direct and immediate effect on the complaining party; and (4) whether the action requires immediate compliance with its terms. Ass'n of Am. Med. Coll., 217 F.3d at 780; see also Franklin v. Mass., 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties."); Mt. Adams Veneer Co. v. United States, 896 F.2d 339, 343 (9th Cir. 1990) ("The general rule is that administrative orders are not final and reviewable 'unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'") (quoting Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)); Lujan, 497 U.S. at 891 (final agency action may not be fit for review unless agency action has been concretely applied to plaintiff); Assiniboine and Sioux Tribes v. Bd. of Oil and Gas, 792 F.2d 782, 789 (9th Cir. 1986).

Although, Courts generally take a pragmatic and flexible view in determining if agency action is final, informal or tentative regulations are not final. See Abbot Labs., 387

U.S. at 149-51.

### 1. Definitive Statement of Agency Position

The Court must first determine if HMAA has shown that Memorandum 2004-13H is a definitive statement of the Insurance Division's position. To meet this requirement, HMAA must show that the challenged agency action represents the consummation of the agency's decision making process. See Or. Natural Desert Ass'n v. U.S. Forrest Serv., 465 F.3d 977, 982 (9th Cir. 2006). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). Courts should not review pending administrative proceedings or agency action that "might render the case moot and judicial review completely unnecessary." Sierra Club v. U.S. Nuclear Regulatory Comm'n, 825 F.2d 1356, 1362 (9th Cir. 1987). Thus, the agency action must represent "the last word" on the agency's position. See Whitman v. American Trucking Ass'n, 531 U.S. 457, 478 (2001).

HMAA argues that the Commissioner has completed the Commissioner's decision making process in determining that the use of discretionary clauses is an "unfair or deceptive act or practice" in violation of HRS § 431:13-102.[6/] See Memorandum

---

[6/] HRS § 431:13-102 states that, "No person shall engage in this State in any trade or practice which is defined in this article as, or determined pursuant to section 431:13-106 to be,

12

2004-13H at 3.  The Court disagrees.

HRS § 431:13-103 does not include discretionary clauses in its definition of "unfair or deceptive acts or practices." Therefore, if the Commissioner believes that HMAA engaged in unfair or deceptive acts or practices, the Commissioner must first serve HMAA a notice of a hearing and give HMAA an opportunity to be heard before the Commissioner can take action against HMAA.[7/]  See HRS § 431:13-106.

It is possible that the Commissioner will decide not to take any action against HMAA.  It is also possible that after HMAA states its case, the Commissioner may determine that the use of discretionary clauses is not an unfair or deceptive act or practice.  Even if the Commissioner finds that HMAA is engaging in unfair or deceptive acts or practices, HMAA can appeal the Commissioner's decision and a court may reverse the Commissioner's determination.  See HRS § 431:13-201(b).  These possibilities belie HMAA's contention that Memorandum 2004-13H is a definitive statement of the Insurance Division's position.  See

---

an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

[7/] At the August 21, 2008 hearing, counsel for the Commissioner assured the Court that this is the only method of recourse for the Commissioner in this case.  If the Court is incorrect, and the Commissioner believes that it may take any action other than that allowed under HRS § 431:13-106, the Commissioner should file a motion for reconsideration; otherwise the Commissioner is precluded from pursuing any action against HMAA other than under HRS § 431:13-106.

<u>Winter v. Cal. Med. Review Inc.</u>, 900 F.2d 1322, 1325-26 (9th Cir. 1989) (dismissing appellant's claim that an investigation represented final agency action as the agency's conclusion could change with additional information and holding that "the court must give the agency an opportunity to formulate a final position").  Therefore, the Court finds that Memorandum 2004-13 is not a definitive statement of the Insurance Division's position.

      **2.  Status of Law**

Not only is Memorandum 2004-13H not a definitive statement of the Insurance Division's position, but it does not have status of law.  As Judge Seabright explained:

> Memorandum 2004-13H, by itself, appears to have no legal effect on MetLife.  There is no indication that this Memorandum, or its contents, was passed as an administrative rule or that MetLife's ability to act as an insurer in the State of Hawaii was conditioned on compliance with Memorandum 2004-13H itself. . . . Therefore, the court agrees with the Defendants to the extent they argue Memorandum 2004-13H, by itself, does not invalidate the discretionary clause contained within the HPH Plan.
>
> The *raison d'etre* of Memorandum 2004-13H is not to implement a *new* rule; instead, the Memorandum was issued as an *interpretation* of an existing statute, HRS § 431:13-102.

<u>Daic v. Metro. Life Ins. Co.</u>, 458 F.Supp.2d 1167, 1175 (D. Haw. 2006), <u>aff'd</u> <u>by</u> <u>Daic v. Haw. Pac. Health Group</u>, Civ No., 06-17342, 2008 WL 3862074 (9th Cir. Aug. 13, 2008).

14

HMAA alleges that Memorandum 2004-13H is an invalid rule since it was not properly processed under the HAPA. The Commissioner, on the other hand, maintains that Memorandum 2004-13H is merely an expression of the Commissioner's opinion as to the proper interpretation of HRS § 431:13-102. Thus, both parties effectively agree that Memorandum 2004-13H is simply an opinion and has no force of law. Therefore, it is not a promulgation of law any more than the stated opinion of any other government official. See, e.g., Haw. Jewelers Ass'n v. Fine Arts Gallery, Inc., 51 Haw. 502, 505, 463 P.2d 914, 916 (1970) (plaintiff could not rely on Director of Finance's opinion that application for a license was unnecessary because the opinion did not have force of law).

The Commissioner's unsuccessful efforts to promote anti-discretionary clause bills further shows that Memorandum 2004-13H does not have the status of binding law. On two occasions after publishing Memorandum 2004-13H, the Commissioner appeared before the Hawaii legislature to persuade the legislature to pass a bill that would make discretionary clauses illegal. See Opp'n to Def.'s Mot. for J. on the Pldgs., Ex. A.1 & A.2. Neither bill became law. See H.B. No. 1063, 23rd Cong. §§ 1-5 (2005); S.B. No. 140, 23rd Cong. §§ 1-5 (2005).

### 3. Direct and Immediate Effect on Complaining Party

HMAA also argues that Memorandum 2004-13H has a direct

15

and immediate effect on HMAA.  HMAA cites the warning letters dated November 20, 2007 and November 21, 2007, in which the Insurance Division advised HMAA that the Insurance Division considered the use of discretionary clauses an "unfair or deceptive act or practice" in violation of HRS § 431:13-102. The Insurance Division gave HMAA until November 30, 2007 to discontinue using discretionary clauses or face formal action. HMAA also cites a third letter dated November 29, 2007, in which the Insurance Division rejected HMAA's proposal to modify the discretionary clauses.  The Insurance Division reiterated that it would take formal action if HMAA did not remove the discretionary clauses from HMAA's insurance contracts.

     HMAA contends that Memorandum 2004-13H and the Insurance Division's subsequent letters show that the Insurance Division's actions will have a direct and immediate effect on HMAA.  HMAA explained at the August 21, 2008 hearing that it believes that if HMAA does not abide by the Commissioner's interpretation of HRS § 431:13-102, HMAA will be subject to immediate fines and cease and desist orders without warning.

     However, HMAA's concerns are unfounded.  As the Court explained supra, if the Commissioner believes that HMAA is using discretionary clauses in violation of the law, the Commissioner must first give HMAA a notice of a hearing and give HMAA an opportunity to be heard before the Commissioner can take action

against HMAA.  See HRS § 431:13-106.  Therefore, the Court finds that Memorandum 2004-13H does not have a direct and immediate effect on HMAA.

### 4. Immediate Compliance

Agency regulations can sometimes force immediate compliance through fear of future sanctions.  See Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 734 (1998).  HMAA argues that the Insurance Division's threat of formal action sufficiently shows that HMAA must immediately comply with the Insurance Division's demands.

The Insurance Division warned HMAA that the Commissioner would take formal action if HMAA did not immediately remove the discretionary clauses from HMAA's insurance contracts.  However, as the Court explained supra, the Commissioner must provide HMAA a notice of a hearing and an opportunity to be heard before the Commissioner can take any formal action against HMAA.  Thus, Memorandum 2004-13H does not require immediate compliance with its terms.

### 5. Conclusions on Finality

The Commissioner has not taken final action. The Insurance Division warned HMAA on three occasions that it would take formal action if HMAA did not remove the discretionary clauses from its insurance contracts.  In addition, the Commissioner himself refers to Memorandum 2004-13H as a decision.

See Memorandum 2004-13H at 3.  However, Memorandum 2004-13H itself does not "impose an obligation, deny a right or fix some legal relationship <u>as consummation of the administrative process</u>."  <u>Chi. & S. Air Lines</u>, 333 U.S. at 113 (emphasis added).

As the Supreme Court held in <u>Ohio Forestry Ass'n</u>, judicial review of administrative decisions that are not final "threatens the kind of abstract disagreements over administrative policies that the ripeness doctrine seeks to avoid."  523 U.S. at 736 (internal quotation marks omitted).  The Court is not equipped to predict the outcome of any future formal action the Commissioner may or may not initiate against HMAA.  <u>Id.</u>  Thus, the Court finds that the Commissioner has not taken final action against HMAA.

### B. The Balance of Hardships

"If there were reason to believe that further development of the facts would clarify the legal question, or that the agency's view was tentative or apt to be modified, only a strong showing of hardship to the parties would justify a prompt decision."  <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 815 (2003).  The second prong of the ripeness inquiry is "less clear and less important" than the first.  <u>Id.</u>

HMAA cannot show that absent judicial intervention, HMAA will suffer a hardship.  If HMAA does not discontinue its

18

use of discretionary clauses, the Commissioner may initiate formal action under HRS § 431:13-106.  However, this is not a certainty.  Moreover, even if formal action is taken, HMAA must be given notice and an opportunity to be heard before the Commissioner can issue a cease and desist order or take any additional punitive measures.  Even if the Commissioner rules against HMAA, HMAA can appeal the Commissioner's decision and a court may reverse the Commissioner's determination.  See HRS § 431:13-201(b).

Therefore, the Court finds that HMAA has not established the basic constitutional requirements to confer jurisdiction on the Court. As a result, this Court does not have jurisdiction to address the merits of HMAA's claims regarding ERISA, the filed rate doctrine and equitable estoppel.

## CONCLUSION

For the reasons articulated above, the Court GRANTS IN PART AND DENIES IN PART the Commissioner's Motion for Judgment on the Pleadings and GRANTS IN PART AND DENIES IN PART HMAA's Motion for Summary Judgment.

     IT IS SO ORDERED.

     DATED:  Honolulu, Hawaii, September 5, 2008.



_____
Alan C. Kay
Sr. United States District Judge

HAWAII MANAGEMENT ALLIANCE ASSOCIATION v. SCHMIDT, Civ. No. 07-0593 ACK-KSC, Order Granting In Part and Denying In Part Defendant's Motion for Judgment on the Pleadings and Granting In Part and Denying In Part Plaintiff's Motion for Summary Judgment.